**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**DONALD RAY ALLEN**                                              **CIVIL ACTION**

**VERSUS**                                                                      **NO. 15-1482**

**N. BURL CAIN**                                              **SECTION: "J"(3)**


### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Donald Ray Allen, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On April 14, 2010, he was convicted of aggravated rape and aggravated incest under Louisiana law.[1]  On May 7, 2010, he was sentenced on the aggravated rape conviction to a term of life imprisonment without benefit of probation, parole, or suspension of sentence and on the aggravated incest conviction to a term of fifteen years imprisonment.[2]  On

---

[1] State Rec., Vol. 3 of 3, trial transcript of April 14, 2010, p. 112; State Rec., Vol. 2 of 3, minute entry dated April 14, 2010.
[2] State Rec., Vol. 3 of 3, transcript of May 7, 2010; State Rec., Vol. 2 of 3, minute entry dated May 7, 2010.

March 23, 2012, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on November 9, 2012.[4]

Petitioner subsequently filed an application for post-conviction relief with the state district court.[5]  That application was denied on January 8, 2014.[6]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[7] and the Louisiana Supreme Court.[8]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[9]  The state concedes that the application is timely.[10]

### **Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

---

[3] State v. Allen, No. 2011 KA 0616 (La. App. 1st Cir. Mar. 23, 2012) (unpublished); State Rec., Vol. 3 of 3.
[4] State v. Allen, 100 So.3d 827 (La. 2012); State Rec., Vol. 3 of 3.
[5] State Rec., Vol. 3 of 3.
[6] State Rec., Vol. 3 of 3, Judgment and Reasons for Judgment dated January 8, 2014.
[7] State v. Allen, No. 2014 KW 0193 (La. App. 1st Cir. May 5, 2014) (unpublished); State Rec., Vol. 1 of 3.
[8] State ex rel. Allen v. State, 161 So.3d 11 (La. 2015); State Rec., Vol. 3 of 3.
[9] Rec. Doc. 1.
[10] Rec. Doc. 9, p. 5.

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent

if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>    If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

### Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

On January 15, 2009, J.T.,[FN2] the defendant's stepdaughter, visited the Terrebonne Parish Sheriff's Office and met with Detective Patrick Babin to discuss a criminal complaint that she had filed against the defendant on the previous evening.  The subject matter of this complaint involved a domestic violence incident between J.T. and defendant that is unrelated to the allegations in the instant case.  In her conversation with Detective Babin, J.T. stated that she had been the victim of sexual abuse by the defendant from the approximate ages of eight to fourteen years old and that her seven-year-old son, D.T., was conceived as a result of that sexual abuse.  J.T. was twenty-two years old when she made this report to Detective Babin.  The results of a paternity test later revealed that the defendant is the biological father of D.T.  In an interview with Detective Nicole Voisin of the Houma Police Department and Detective Babin, the defendant admitted to

engaging in sexual intercourse with the victim, but he stated that it occurred only one time, when J.T. was approximately fourteen or fifteen years old, and that J.T. had seduced him. The defendant was arrested and subsequently charged by grand jury indictment with one count of aggravated rape and one count of aggravated incest.

> [FN2]  In accordance with La. R.S. 46:1844W, the victim herein is referenced only by her initials, or referred to as "the victim." To further protect the identity of the victim, her biological family members are also referenced by their initials.

At trial, J.T. testified that the defendant had engaged in sexual intercourse with her on multiple occasions, beginning when J.T. was eight years old. J.T. described in great detail at least three distinct occasions when the defendant forced her to engage in vaginal sexual intercourse with him when she was younger than twelve years old. J.T. also described one distinct occasion of oral sexual intercourse with the defendant that occurred when she was approximately twelve or thirteen years old. J.T. stated that she had told her mother, A.A., "[o]ver fifty times" since she was eight years old that the defendant had raped her on multiple occasions, but A.A. never believed her claims.

When J.T. was thirteen years old, she became pregnant with her son, D.T. J.T. testified that when her mother initially asked her who fathered the child, J.T. responded that "G.R." did.[FN3]  J.T. stated that her mother did not believe that the defendant was the father, so J.T. changed her story to say that her cousin was D.T.'s father. J.T. also admitted that she later falsely changed her story again to name her boyfriend as the father of D.T. At trial, J.T. admitted to lying to her mother, her grandmother, and Office of Community Services ("OCS") investigators about the identity of the father of D.T. J.T. stated that she refrained from telling OCS investigators that the defendant was the father of D.T. because she was afraid that she and her siblings would be put into foster homes.

> [FN3]  "G.R." is J.T.'s colloquial name for the defendant.

A.A. testified at trial as a state witness and stated that J.T. had never said that the defendant raped her. A.A. did admit that J.T. told her that the defendant was D.T.'s father when J.T. initially found out about her pregnancy, but A.A. said that J.T. soon changed that story to say that her cousin was the father. A.A. testified that she asked the defendant whether he was D.T.'s father, but the defendant said that he was not, so she never worried about the issue again. Despite the results of the paternity test indicating that the defendant is the father of D.T., A.A. testified that she still did not believe that the defendant impregnated J.T.

The defendant did not testify at trial, nor did defense counsel call any witnesses on the defendant's behalf. The trial judge found the defendant guilty as charged on both counts. The trial judge noted that he was convinced beyond a

6

reasonable doubt that the defendant had engaged in vaginal sexual intercourse with the victim at least four times before she was twelve years old.  The trial judge also noted that he was convinced beyond a reasonable doubt that the defendant was the father of D.T., who was conceived with J.T., his stepdaughter, when she was thirteen years old.[11]

## Petitioner's Claims

## Denial of Mistrial

In his first claim, petitioner argues that the trial court erred in denying the defense motion for mistrial based on the mid-trial revelation of a purported Brady violation.  Citing article 930.A(4) of the Louisiana Code of Civil Procedure, the state  argues that the claim is barred from federal review because it was litigated on direct appeal.  The state is incorrect for two reasons.

First, article 930.4(A) provides that, *in Louisiana post-conviction proceedings*, "[u]nless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered." However, this claim was not even asserted by petitioner in the state post-conviction proceedings, much less denied by the state courts based on article 930.4(A).

Second, in any event, even if that had occurred, *which it did not*, the claim *still* would not be procedurally barred in this Court.  As the United States Fifth Circuit Court of Appeals has explained, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994).  Therefore, the bar does not preclude federal habeas review of the claims; rather, the federal court simply "look[s]-through" the ruling on collateral review and considers the ruling on direct appeal.  Id. at

---

[11] State v. Allen, No. 2011 KA 0616, at pp. 3-5 (La. App. 1st Cir. Mar. 23, 2012) (unpublished); State Rec., Vol. 3 of 3.

1582-83.  See also Krodinger v. Kent, Civ. Action No. 16-2069, 2016 WL 7191684, at *5 (E.D. La. Sept. 30, 2016) (Wilkinson, M.J.), adopted, 2016 WL 7187948 (E.D. La. Dec. 12, 2016) (Barbier, J.).

Therefore, the only question before this Court is whether the state court decision denying the claim on direct appeal "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, the undersigned finds that it was not.

On direct appeal, the Louisiana First Circuit Court of Appeal rejected the claim, holding:

> In his sole assignment of error, the defendant argues that the trial court erred in denying defendant's motion for a mistrial when a witness statement allegedly constituting Brady[FN4] material was discovered after the trial had already commenced.  Specifically, the defendant contends that a witness statement written by A.A. during the investigation of the instant offenses contained exculpatory material that was relevant to his ability to prepare a defense.

> [FN4]  Brady v. Maryland, 373 U.S. 83 (1963).

> The defendant filed a motion seeking pretrial discovery under Louisiana Code of Criminal Procedure article 718.  During cross-examination of state witness Detective Voisin, it was established that the victim's mother had given a written statement to the police.  The prosecutor interjected during this testimony that A.A.'s statement was not provided to the defendant because it contained no Brady material.  After Detective Voisin's testimony, the state discussed the existence of A.A.'s statement with Detective Voisin and subsequently discovered that a copy of this statement was located in the state's file.  During a break in the trial, the state admitted to the trial court that a copy of this statement had not been provided to the defendant, even though it appeared to contain Brady material, because the state was unaware of its existence until Detective Voisin had testified.  The state noted that this statement had been inadvertently tucked behind a search warrant return for the defendant's DNA sample.

> In the statement, which was written during the investigation of the instant offenses, A.A. stated:

>> [J.T.] didn't tell me anything about her stepdad until she was about 18-20 [years old,] and she told me that he was laying [sic] down with my daughter.  She said it every time she would get mad.  When

she wasn't mad no more[,] she would tell me she was sorry and she was talking out of her head.  When she at [sic] one of [the] elementary schools someone came and talked to us about it.  They talked to her and then they told me they was going to drop it because [J.T.] said that [the defendant] didn't do anything.

After being provided with this statement, defense counsel moved for a mistrial, alleging that the late disclosure of A.A.'s statement violated the defendant's due process rights and affected the defendant's ability to challenge the credibility of the victim.  The trial court denied the defendant's motion for a mistrial, noting that neither the victim nor A.A. had testified in this case.  The trial court agreed with the state's argument that the late disclosure of A.A.'s statement would only result in unfairness to the defendant in the event J.T. denied making such a statement to OCS investigators because the defendant might then need to secure an additional witness in order to attack J.T.'s credibility.  The trial court agreed to revisit the matter after the presentation of all of the evidence in the case.  The defendant's renewed motion for a mistrial on these grounds was again denied after the state rested its case.

Article 718 requires that, "on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect ... documents ... which are within the possession, custody, or control of the state, and which: (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment."  In pertinent part, Article 729.5 A of the Louisiana Code of Criminal Procedure provides for sanctions for the failure to comply with the statutory discovery procedures as follows:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.

Mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused.  State v. Smith, 430 So. 2d 31, 44 (La. 1983).  The determination of whether prejudice has resulted lies within the sound discretion of the trial judge.  Id.

In his brief, the defendant contends that defense counsel was not provided with A.A.'s written statement until "minutes before she was called to the stand by the state."  However, our review of the record reveals that while defense counsel was provided with this statement immediately before J.T. testified, the defendant's trial was recessed for the evening in the middle of defense counsel's cross-

9

examination of J.T. in order to allow defense counsel to inspect this and other documents that he had been provided with during the first day of the defendant's trial. Given the simplistic nature of A.A.'s written statement, an overnight recess was sufficient for defense counsel to prepare for any further questioning of J.T. with regard to the statement. We also note that A.A. testified at trial after J.T., so the recess allowed sufficient time to prepare for her cross-examination as well.

The defendant also argues in his brief that the late disclosure of A.A.'s statement was not cured by J.T.'s admission about lying to OCS investigators about the paternity of her son because A.A.'s statement actually references statements allegedly made by J.T. regarding sexual abuse prior to her pregnancy. Thus, the defendant claims that the statements allegedly made by J.T. to someone at an elementary school reference the time period relevant for the more serious charge of aggravated rape. Accordingly, the defendant states that his ability to prepare a defense on this charge was unfairly hindered by not having access to this statement prior to trial.

When A.A. was questioned by the state regarding her statement, she initially testified that the people from the elementary school had interviewed J.T. about her pregnancy. In response to further questioning regarding the statement, A.A. responded that ladies who were "probably . . . with the State" questioned J.T. about sexual abuse, but A.A. testified this time that she could not remember whether this questioning occurred before or after it was discovered that J.T. was pregnant. Therefore, the only information in the record regarding the timing of the statements allegedly made by J.T. to someone at an elementary school is in the form of equivocal testimony from A.A.

Not all cases involving late disclosure of exculpatory evidence result in reversible error. Smith, 430 So. 2d at 42. We must determine whether the late disclosure so prejudiced the defendant that he was denied his constitutional right to a fair trial. Id. We note that A.A.'s written statement contains no concrete information about the identity of the persons to whom J.T. allegedly made a statement or about the timing of such a statement. Even if defense counsel had received this statement prior to trial, the vague nature of this statement, coupled with A.A.'s inability to remember specific information regarding it, leads this court to conclude that the trial court did not abuse its discretion in finding that the defendant was not prejudiced by the late discovery of A.A.'s statement.

J.T. admitted on the stand that after her initial disclosure to her mother that "G.R." was the father of her child, she lied to everyone, including her mother, grandmother, and OCS investigators about the identity of the father of her child. Despite these admitted fabrications, the trial court ultimately found J.T.'s testimony to be "very credible," "very forthright," and "very honest." Thus, the court made a credibility determination with regard to J.T.'s testimony and found her testimony to be credible, despite the statement written by A.A. that indicated J.T. once said the defendant did not do anything to her. Further, the trial court allowed defense counsel adequate time to prepare for his cross-examinations of J.T. and A.A. based on this statement by calling an overnight recess prior to the

completion of the testimonies of J.T. and A.A.  Therefore, the trial court did not
abuse its discretion in concluding that the defendant was not entitled to a mistrial
as a result of the late disclosure of A.A.'s statement.
      This assignment of error is without merit.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning
additional reasons.[13]

     To the extent that petitioner is arguing that the state court erred in applying the state laws
concerning the grant or denial of a mistrial, such a claim is not cognizable in a federal habeas
corpus proceeding.  "'[I]t is not the province of a federal habeas court to reexamine state-court
determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999)
(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  Further, even if the state courts in fact
misapplied state law, that would be of no moment in this proceeding.  Federal habeas corpus relief
may be granted only to remedy violations of the Constitution and laws of the United States; mere
violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983);
Thomas v. Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) ("[E]rrors of
state law, such as a denial of a mistrial, must rise to a constitutional dimension in order to merit
habeas relief."); Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994)
("Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal
habeas court, are without authority to correct a simple misapplication of state law; we may
intervene only to correct errors of constitutional significance."); Williams v. Cain, Civ. Action
Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *25 (E.D. La. May 7, 2009), aff'd, 359 Fed.

---

[12] State v. Allen, No. 2011 KA 0616, at pp. 5-10 (La. App. 1st Cir. Mar. 23, 2012) (unpublished); State Rec., Vol. 3 of 3.
[13] State v. Allen, 100 So.3d 827 (La. 2012); State Rec., Vol. 3 of 3.

App'x 462 (5th Cir. 2009); Talley v. Cain, Civ. Action No. 08-3542, 2009 WL 916331, at *15 (E.D. La. Apr. 6, 2009).

Moreover, the Court rejects any contention that the state's action somehow violated federal law.  As a preliminary matter, the Court notes that no Brady violation in fact occurred.  Brady holds that "the *suppression* by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963) (emphasis added).  The statement in the instant case cannot be considered "suppressed" in violation of Brady because it was produced during trial in sufficient time for defense counsel to put it to effective use.  See, e.g., Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009); Stogner v. Cain, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

Rather, the state's action was, at worst, merely a discovery violation.  However, there is no general federal constitutional right to discovery in a criminal case, and, therefore, a claim that a prosecutor violated state discovery rules simply is not cognizable on federal habeas review. Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002); Lande v. Cooper, Civ. Action No. 11-3130, 2013 WL 5781691, at *16 (E.D. La. Oct. 25, 2013); Smith, 2009 WL 1704335, at * 10; Burns v. Lafler, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004).

### Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel at trial.  The state

district court denied that claim, holding:

> The defendant's post conviction relief application alleges one assignment
> of error, to wit, ineffective assistance of counsel.  The defendant alleges trial
> counsel was constitutionally ineffective because "he failed … to introduce crucial
> evidence for the judge's consideration, to properly prepare for trial, to render
> meaningful investigation, to confront his accuser to crucial cross examination, and
> to present a defense in his behalf …."
>
> The court has reviewed the allegations of the defendant in his application
> for post conviction relief, the answer of the state thereto, and the entire record of
> the proceedings in this court.  The court is of the opinion that all of the material
> questions of fact can be properly resolved without an evidentiary hearing for the
> taking of testimony or other evidence.  It appears that all of the factual and legal
> issues can be resolved based upon the record described above and that an
> evidentiary hearing in this case is not necessary.  For the following reasons, the
> court has denied the relief requested by the defendant.[14]

After recounting the facts as summarized by the Court of Appeal on direct appeal, the state district

court then continued:

> Claims of ineffective assistance of counsel are reviewed under the two-part
> test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.ED2d 674
> (1984).  In order to prevail, the defendant must show both that (1) counsel's
> performance was deficient and (2) he was prejudiced by the deficiency.  With
> regard to the second element, i.e., prejudice, the defendant must show that any error
> was so serious as to deprive him of a fair trial or other proceeding.  To carry this
> burden, the defendant must show that there is a reasonable probability that but for
> counsel's deficient performance, the result of the proceeding would have been
> different.
>
> According to the defendant, his trial counsel was ineffective, first, because
> he failed to introduce "crucial evidence for the judge's consideration."  The
> defendant claims that while he was intoxicated, the thirteen year old victim crawled
> into his bed and had sex with him.  He thought she was his wife.  He told defense
> counsel that he knows about this incident because the victim told him about this
> incident of sexual intercourse that resulted in her pregnancy.  The defendant
> believes that failure of defense counsel to present this evidence constituted
> ineffective assistance of counsel to the charge of aggravated incest.

---

[14] State Rec., Vol. 3 of 3, Reasons for Judgment dated January 8, 2014.

With regard to the charge of aggravated rape, the defendant alleges that defense counsel's failure to present evidence of "his very large penis" amounted to ineffective assistance. He alleges that evidence of this fact, which he characterizes as an alibi defense, would have led to the conclusion that he was incapable of penetrating the eight-year-old child without injuries that would have required hospitalization at the time of the alleged incidents of sexual intercourse.

With regard to both charges, the defendant claims trial counsel was further ineffective because he failed to present evidence to show the true character of the victim, i.e., that she was "street wise, jail wise, angry, [and] lying," and that counsel failed to object when the prosecution addressed the victim as "honey" and "baby" during questioning by the state.

As pointed out above, in order to prevail on a claim of ineffective assistance of counsel, a defendant must show that he was prejudiced by any deficient performance on the part of trial counsel. Prejudice exists if there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

The presiding judge at the defendant's trial was the undersigned judge who rendered the verdicts in this non-jury case. The court will assume only for the purposes of argument that the defendant's claims of deficient performance on the part of trial counsel are accurate and that the court would have had before it evidence of (1) the defendant's intoxication at the time he impregnated the victim and (2) the defendant's large penis size at the time the victim was eight years old.

In this case, the defendant was not prejudiced by the failure to offer the evidence he has suggested was crucial. The undersigned judge would not have found it reasonable to believe that the defendant was so intoxicated at the time he had sexual intercourse with his thirteen year old stepdaughter, that he did not know the difference between her and his wife, and yet was still physically capable of performing the sexual act. Even in light of this evidence, there is no probability that the guilty verdict on the charge of aggravated incest would have been different.

Likewise, there is no reasonable probability that the guilty verdict on the charge of aggravated rape would have been different even if the evidence of the defendant's alleged large penis would have been offered. At the time of the trial, it had been approximately fifteen years since the victim had been eight years old. It is highly unlikely that any credible and relevant evidence regarding the physical attributes of either the victim or the defendant from the critical time period would have been available, or that it would have supported the contention of the defendant that the victim would have necessarily been hospitalized for injuries as a result of sexual intercourse with the defendant. Further, even if available, there is no reasonable probability that the guilty verdict would have been different, especially in light of the detailed and credible testimony of the victim and the fact that the court found beyond a reasonable doubt that four distinct acts of sexual intercourse occurred and some occurred well after the victim was no longer eight years old.

The defendant also complains that defense counsel failed to object to the terms of endearment used by the prosecutor to address the victim during

questioning.  The verdicts rendered in this case were not influenced in any way by the prosecutor's alleged improper appellations.  Because the defendant was not prejudiced by defense counsel's failure to object, no relief will be granted to the defendant for counsel's alleged ineffective assistance in this regard.

Finally, the defendant asserts that trial counsel failed to present evidence to show the true character of the victim, i.e., that she was "street wise, jail wise, angry, [and] lying."  The court has thoroughly reviewed the transcript of the trial testimony of the victim, including cross-examination by defense counsel.  (Trial Transcript, April 13, 2010, pp. 108-157; Trial Transcript, April 14, 2010, pp. 4-45).  The testimony clearly showed that the victim, by the time of trial, was as described by the defendant.  By her own admission, she had, in fact, lied in the past about her experiences with the defendant.  The defendant, however, has not suggested any additional information about the victim that would have caused this court to alter its verdict with regard to either charge in this case.

For all the foregoing reasons, the application for post conviction relief filed by the defendant on August 12, 2013, has been dismissed and all relief sought therein has been denied.[15]

Without additional reasons assigned, relief was then likewise denied by the Louisiana First Circuit Court of Appeal[16] and the Louisiana Supreme Court.[17]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were

---

[15] State Rec., Vol. 3 of 3, Reasons for Judgment dated January 8, 2014.

[16] State v. Allen, No. 2014 KW 0193 (La. App. 1st Cir. May 5, 2014) (unpublished); State Rec., Vol. 1 of 3.

[17] State *ex rel.* Allen v. State, 161 So.3d 11 (La. 2015); State Rec., Vol. 3 of 3.

adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims:  Strickland v. Washington, 466 U.S. 668 (1984).  Strickland established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  Id. at 697.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of

counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In his federal application, petitioner first complains that counsel was not properly prepared for trial because he was not privy to evidence withheld by the prosecution.[18]  However, it is unclear how petitioner faults his counsel in this regard.  Discovery was in fact requested by the defense,[19] and defense counsel strenuously objected and, as noted above, even moved for mistrial when it came to light during trial that the prosecution had failed to produce certain evidence.[20]  Therefore, counsel's purported inability to better prepare for trial stemmed not from his own deficient performance (as is required to support an ineffective assistance claim), but rather from an act of

---

[18] Rec. Doc. 1-1, p. 13.
[19] State Rec. Vol. 1 of 3.
[20] See, e.g., State Rec., Vol. 2 of 3, transcript of April 13, 2010, pp. 96-107 and 154-56; State Rec., Vol. 3 of 3, transcript of April 14, 2010, pp. 76-78 and 87-104.

18

the prosecution over which counsel had no control.  Therefore, this claim is not properly asserted as a Sixth Amendment ineffective assistance claim.[21]

In connection with the foregoing claim, petitioner also appears to suggest that his counsel was ineffective in advising petitioner to elect a bench trial rather than to demand trial by jury.[22] However, if that is petitioner's intention, that claim likewise has no merit.  The United States Fifth Circuit Court of Appeals has held that a petitioner is not entitled to federal habeas corpus relief based on such a claim unless he demonstrates that a different factfinder, i.e. a jury, would have rendered a different verdict.  Wiltz v. Louisiana, No. 94-30017, 1994 WL 286254, at *5 (5th Cir. June 22, 1994); Green v. Lynaugh, 868 F.2d 176, 178 (5th Cir. 1989); Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *13 (E.D. La. Dec. 23, 2009).  Petitioner has made no such showing, and, therefore, the claim fails.

Petitioner next faults his counsel for failing to object to the prosecutor addressing the victim as "honey" and "baby" during trial.  He opines that such references were prejudicial because they allowed the prosecutor to subtly give the judge the impression that the victim and prosecutor were friends.[23]  However, it has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) (quotation marks omitted); accord Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action

---

[21] Further, as noted above, petitioner also asserted a separate but related claim that his rights were violated by the prosecution's failure to produce the evidence.  However, for the reasons already discussed, that claim likewise has no merit.

[22] Rec. Doc. 1-1, pp. 13-14.

[23] Rec. Doc. 1-1, p. 14.

No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008).  Moreover, the United States

Supreme Court has clearly held:

> *Judicial scrutiny of counsel's performance must be highly deferential.*  It is all too tempting for a defendant to second-guess counsel's assistance after conviction and adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*

Strickland, 466 U.S. at 689 (citation and quotation marks omitted; emphasis added).

In the instant case, petitioner essentially argues that the failure to object to the prosecutor's

use of the terms "honey" and "baby" so obviously constituted deficient performance that the state

court's decision deferring to counsel's strategic choice on this issue was necessarily unreasonable.

The undersigned does not agree.  Although the prosecutor's use of terms does seem chauvinistic

and inappropriate in a trial, the Court disagrees with petitioner's suggestion that it would be

interpreted by the judge as an indication that the prosecutor and the victim had a personal

relationship.  Moreover, in any event, one certainly cannot conclude that prejudice resulted – in

other words, that there is a reasonable probability that the result of the proceeding would have been

different if only counsel had objected to the inappropriate but seemingly innocuous terms of

endearment.  Therefore, this claim fails.

Petitioner next complains that counsel was ineffective for failing to adequately investigate

the case to obtain the necessary evidence to prepare and present a defense premised on the theory

that petitioner's "very large penis" precluded the possibility that the alleged sexual relations in this

case occurred.[24]   However, to prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense.   In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts.   See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).   Similarly, to prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one.   See, e.g., Otero v. Louisiana, Civ. Action No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *9 n.24 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011).   For the following reasons, petitioner has not made these showing with respect to this claim.

Specifically, petitioner's claim is unsupported by anything other than his own uncorroborated braggadocio concerning his genitalia.   For example, he has never presented any evidence whatsoever concerning either his physical attributes or those of the victim at the time of the crime, much less any scientific evidence indicating that sexual intercourse between the two would have been physically impossible or, if possible, would have resulted in such injury to the victim that medical care would have been required.   In the absence of such evidence, there is no basis for this Court to find that additional investigation or preparation would have resulted in a

---

[24] Rec. Doc. 1-1, p. 15.

viable "defense" that petitioner's penis was simply too large for him to have committed the crimes at issue.  Therefore, this claim necessarily fails.

Petitioner also claims that counsel failed to procure and present evidence showing that the victim was a flirty, sexually aware, and physically mature troublemaker who was in love him and to vigorously cross-examine her on how those traits motivated her to make false accusations against him.[25]  For the following reasons, the undersigned cannot say that the state court's rejection of those arguments was unreasonable.

As an initial matter, the court notes that even if the victim possessed such traits, it would not constitute a defense to either of the charges herein, i.e. aggravated rape of a child and aggravated incest.  The willingness of a victim's participation in such crimes in no way absolves the perpetrator of criminal responsibility.  Under the aggravated rape statute, a child victim is legally incapable of consenting to anal, oral, or vaginal sexual intercourse.  See La. Rev. Stat. Ann. § 14:42(A)(4).[26]  Likewise, under the aggravated incest statute, La. Rev. Stat. Ann. § 14:78.1, a statute which has since been repealed, consent was not a defense when the victim was a minor.

To the extent that petitioner is simply arguing that counsel should have more forcefully cross-examined the victim and attempted to cast doubt on her veracity due to these alleged traits, such a tactic in case involving a sex crime against a child is obviously fraught with peril and could offend the trier of fact.  Moreover, in any event, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential

---

[25] Rec. Doc. 1-1, pp. 16-17.
[26] At the time of the offense in this case, the crime was known as "aggravated rape"; however, the law was thereafter changed, and the offense is now known as "first degree rape."  See La. Rev. Stat. Ann. § 14:42(E) ("For all purposes, 'aggravated rape' and 'first degree rape' mean the offense defined by the provisions of this Section and any reference to the crime of aggravated rape is the same as a reference to the crime of first degree rape.  Any act in violation of the provisions of this Section committed on or after August 1, 2015, shall be referred to as 'first degree rape'.)

exercise of professional judgment." <u>Ford v. Cockrell</u>, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); <u>accord</u> <u>Lewis v. Cain</u>, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), <u>aff'd</u>, 444 Fed. App'x 835 (5th Cir. 2011); <u>Williams v. Cain</u>, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), <u>aff'd</u>, 359 Fed. App'x 462 (5th Cir. 2009); <u>Parker v. Cain</u>, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).  Further, courts are not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, they are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  <u>Strickland</u>, 466 U.S. at 689.  It is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  <u>Id</u>.  Here, such second-guessing is certainly inappropriate because, contrary to petitioner's suggestion otherwise, defense counsel in fact vigorously, extensively, and effectively cross-examined the victim concerning the truthfulness of her allegations against petitioner.[27]

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claim, this Court should likewise deny relief.

---

[27] State Rec., Vol. 2 of 3, transcript of April 13, 2010, pp. 147-53; State Rec., Vol. 3 of 3, transcript of April 14, 2010, pp. 4-41 and 80-83.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Donald Ray Allen be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[28]

New Orleans, Louisiana, this ninth day of February, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[28] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

24